1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9

DAVID PAUL DAVENPORT,

10                    Plaintiff,

11          v.

12   BOARD OF TRUSTEES OF THE STATE
     CENTER COMMUNITY COLLEGE
13   DISTRICT,

14                    Defendant.

15

1:07-cv-00494 OWW SMS

ORDER ON DEFENDANT'S MOTION
TO DISMISS COMPLAINT
PURSUANT TO FED. R. CIV. P.
12(b)(6), OR IN THE
ALTERNATIVE, MOTION FOR A
MORE DEFINITE STATEMENT
PURSUANT TO FED. R. CIV. P.
12(e)

16

17                        I. __INTRODUCTION__.

18      Plaintiff David Paul Davenport ("Davenport") brings this *pro
se* action under Title VII of the Civil Rights Act of 1964,
19   codified at 42 U.S.C. § 2000e-3(a), based on a claim of unlawful
20   retaliation by Plaintiff's former employer, Defendant State
21   Center Community College District ("District").  Davenport
22   alleges the District fired him in retaliation for a sexual
23   harassment and discrimination complaint he submitted to the
24   District against his supervisor, Dr. Margaret E. Mericle.  He
25   also asserts a wrongful termination claim based on various state
26   law theories and other claims for which he does not identify a
27   legal theory.

28

1

1    Before the court for decision is Defendant's Motion to

2  Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P.

3  12(b)(6), or in the alternative, Motion for a More Definite

4  Statement Pursuant to Fed. R. Civ. P. 12(e) ("Motion to

5  Dismiss").  Defendant seeks dismissal for failure to state a

6  claim upon which relief may be granted on the grounds that: 1)

7  any claim for retaliation based on alleged acts prior to and

8  including the date of the Board of Trustees' decision to

9  terminate Plaintiff, January 7, 2003, are barred because

10 Plaintiff did not submit his claim to the Equal Employment

11 Opportunity Commission ("EEOC") within the Title VII filing

12 limitations period; 2) any claim for retaliation based on recent

13 alleged acts in November and December of 2006 is barred because

14 Plaintiff has failed to first exhaust his administrative

15 remedies; 3) Plaintiff's state law claims are barred by the

16 statute of limitations of the California Tort Claims Act, which

17 prevents suits for money or damages based on claims that accrued

18 more than one year earlier or, in some cases, more than six

19 months earlier; and 4) Plaintiff has failed to exhaust his

20 administrative remedies with respect to his state law claims

21 because he has not submitted a claim to the District prior to

22 filing a lawsuit as required by the California Tort Claims Act.

23

24              II.  FACTUAL AND PROCEDURAL BACKGROUND.

25 A.    Summary of the Complaint.

26    Plaintiff alleges he was fired from his position as a

27 tenured history instructor at Fresno City College by the

28 District's Board of Trustees in retaliation for making an

                              2

accusation of discrimination and sexual harassment against his
supervisor, Dr. Margaret Mericle.  He asserts that in doing so,
the District violated Title VII of the Civil Rights Act of 1964.
Plaintiff's complaint contains a long list of allegations of
allegedly unlawful conduct by the District, the clearest of which
is his Title VII retaliation claim.

In response to Defendant's motion to dismiss, Plaintiff
clarifies his claims for relief as retaliation under Title VII
and unlawful termination, the latter "based on violations by the
Defendant of an employment contract; violations by the Defendant
of its own policies, rules and regulations as they relate to
making and resolving complaints; and violations by the Defendant
of various California Education Codes as they relate to equitable
treatment of all employees by a given employer."  (Doc. 17 at 2.)
Plaintiff explains that he wrote a complaint against Dr. Mericle
and delivered it to her supervisor, Tony Cantu, on March 19,
2002.  Six weeks later, on May 6, 2002, he was placed on
administrative leave by Randy Rowe, the District's assistant vice
chancellor for human resources, who cited misconduct allegations
against Plaintiff as the reason for this administrative action.

Plaintiff asserts his claim for wrongful termination under
state law on a breach of contract theory, based on piecing
together various accusations and assertions Plaintiff makes in
his complaint and opposition papers.  Plaintiff complains that
any "accusations of misconduct" against him that Mr. Rowe cited
as the reason for placing Plaintiff on leave were never provided
to him nor was he promptly notified of the complaints in
purported violation of the operative collective bargaining

3

agreement.  Plaintiff also asserts that the investigation of the accusations against him, which took place after he was placed on leave, was improper because no written complaint existed as the collective bargaining agreement requires before an investigation is initiated.  He further asserts that the District's actions violated various policies of the Board of Trustees and provisions of the California Education Code in contravention of his employment contract.

In Mr. Rowe's letter to the Board recommending Plaintiff's termination, forty accusations of misconduct were identified. Plaintiff asserts he was never informed of the existence of these accusations and contends that Mr. Rowe and others "fabricated these complaints" against him.  Plaintiff also complains that "none of the accusations identified any duty or responsibility of faculty that I hadn't performed and none identified any policy rule or regulation that I had violated."  (Doc. 1, Complaint at 4.)

Plaintiff alleges he engaged his union's president and attorney to argue on his behalf with Mr. Rowe, claiming that they supported his position that the District's actions against him violated the collective bargaining agreement.  On June 7, 2002, Plaintiff claims he wrote a letter to District Chancellor Judith Redwine accusing Mr. Rowe of retaliatory misconduct in response to Plaintiff's sexual harassment and discrimination complaint against Dr. Mericle.  Plaintiff further alleges that he notified the California Department of Fair Employment and Housing ("DFEH") on November 19, 2002 of his retaliation complaint, informing the agency that the District was wrongfully proceeding with steps

**4**

that pointed to his imminent dismissal.  Plaintiff claims he submitted a copy of the statement he made to the Board alleging retaliation to each Board member before they voted in closed session to fire him on January 7, 2003.

After he was fired, Plaintiff alleges the District continued to retaliate against him.

> Among the nasty things it subsequently did was (1) force me to go to court to defend myself against efforts to get a restraining order against me because I had mentioned at the Board meeting Dr. Mericle's and Mr. Rowe's actions against me, (2) cut off my pay eleven months before the outcome of the evidentiary hearing was known, (3) fail to enact policies, rules, etc. to prohibit other faculty from engaging in the behavior that they said was so egregious as to warrant my dismissal, and (4) interfere with my efforts to find employment as recently as December, 2006, when it sent information to the California Commission on Teacher Credentialing that resulted in the Commission denying my application for a credential to work as a substitute teacher.  Any reasonable person will conclude that this is compelling evidence that the SCCCD discriminated against me, retaliated for making a sexual harassment complaint against Dr. Mericle, and that it continues to make my life miserable.

(Doc. 1, Complaint at 4-5.)

Plaintiff asserts that the DFEH issued him a right-to-sue letter on August 17, 2006, after which he filed a charge with the EEOC.  The EEOC issued him a right-to-sue notice on December 29, 2006, which Plaintiff attaches to his complaint.

On the last page of his complaint, in the section entitled "Relief," Plaintiff requests reinstatement, lost wages and expenses, and "damages in the amount of $500,000 for emotional distress, defamation of character and breach of contract."  This is the only reference to emotional distress and defamation in the complaint or Plaintiff's opposition.  He does not identify any defamatory statements.

1    Finally, in his opposition, Plaintiff alleges he was

2  dismissed without an opportunity to respond to the charges

3  against him in violation of his Fourteenth Amendment Due Process

4  rights.  Without further explanation, he summarily asserts in a

5  footnote in his opposition: "It is also likely that Defendant's

6  retaliation against Plaintiff is a United States Code Section

7  1983 violation because Defendant acted under color of authority

8  in depriving Plaintiff of his Constitutional rights."[1] (Doc. 17

9  at 2, fn 1.)

10

11  B.    Administrative Hearing and Appeals to State Courts.

12    Plaintiff alleges he submitted a notice of opposition to the

13  District's decision to terminate his employment within 30 days of

14  the decision.  He then submitted the matter to an arbitrator who

15

16

17    [1] Because a pro se Plaintiff's pleadings are liberally
    construed, Plaintiff's assertion of a section 1983 claim is
18  briefly addressed as follows: 1) as a state agency, the State
    Center Community College District ("District") is not a proper
19  party as it enjoys Eleventh Amendment immunity against section
    1983 actions.  *See Sosa v. Hiraoka*, 714 F.Supp. 1100, 1104
20  (E.D.Cal. 1988) (State Center Community College District found to
    be a state agency); *Sosa v. Hiraoka*, 920 F.2d 1451 (9th Cir.
21  1990)(in reversing trial court's application of 11th Amendment
    immunity to bar suit against the District on a Title VII claim
22  because Congress has expressly allowed such suits, the Ninth
    Circuit refers to the District as a subdivision of the state and
23  does not dispute trial court's characterization of it as a state
    agency); 2) even were section 1983 applicable to the District,
24  the statute has a two-year limitations period, *Equity Lifestyle
    Properties Inc v. County of San Luis Obispo*, 505 F.3d 860, 869
25  (9th Cir. 2007); given that this suit was filed on March 29, 2007
26  regarding termination and other actions by the District in
    January 2003 and in months prior, the two-year statute of
27  limitations bars Plaintiff's civil rights action.
28

declined to hear it because the collective bargaining agreement did not grant him review authority.  An administrative hearing was held where an administrative law judge sustained the District's decision.  Plaintiff subsequently petitioned the Fresno Superior Court for a trial de novo, which was denied. Plaintiff appealed this denial to the Fifth District Court of Appeal, which was unsuccessful.  Finally, Plaintiff petitioned the State Supreme Court for review.  Review was denied.

Plaintiff references the above administrative and state court actions in both his complaint and opposition.  Defendant requests judicial notice of Administrative Law Judge Stephen J. Smith's decision in the state's administrative hearing on this matter, California Office of Administrative Hearings Case No. N2003030194, and letters from DFEH as well as a copy of Plaintiff's DFEH complaint.  (Doc. 20, Defendant's Request for Judicial Notice, Exs. A and B.)  Defendant also requests judicial notice of the Writ of Administrative Mandamus Statement of Decision of the Fresno County Superior Court denying Plaintiff's appeal of the administrative hearing decision and the California Fifth District Court of Appeal's opinion affirming this judgment. (Doc. 20, Defendant's Request for Judicial Notice, Exs. C and D.) As official records of a state administrative agency and state court actions, judicial notice of these exhibits is proper. *Manufactured Home Communities, Inc. v. City of San Jose*, 40 F.3d 1022, 1037 (9th Cir. 2002); *Interstate Natural Gas Co. v. Southern Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953).  Under Fed. R. Evid. 201(b), these are public records and their existence cannot be disputed.  Defendant's request for judicial

7

notice of these documents is granted.

C.    Procedural History.

        Plaintiff filed his complaint on March 29, 2007 and attached
the December 29, 2006 right-to-sue notice he received from the
EEOC.  (Doc. 1.)  Defendant filed its Motion to Dismiss
Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or in
the alternative, Motion for a More Definite Statement Pursuant to
Fed. R. Civ. P. 12(e) on June 22, 2007.  (Doc. 14.)  Plaintiff
responded by filing "Plaintiff's Response to Defendant's Motion
to Dismiss and to Defendant's Memo. of P & A" on July 25, 2007,
in which he opposed Defendant's motion.  (Doc. 17.)  Plaintiff
attached various letters to his response, including
correspondence between him and Mr. Rowe, a page of the
administrative hearing transcript, and a page of the Fifth
District Court of Appeal's opinion.  (*Id.*)  Defendant filed a
reply on August 20, 2007, along with a request for judicial
notice of four documents: the discrimination complaint Plaintiff
filed with DFEH and the corresponding letters from DFEH to
Plaintiff and the District closing the case; the administrative
law judge's decision; the Fresno County Superior Court's
decision; and the California Fifth District Court of Appeal's
opinion.  (Docs. 19 and 20.)

        On August 24, 2007, Plaintiff filed "Plaintiff's Response to
Defendant's Request for Judicial notice," attaching his own
Request for Judicial Notice of various documents, including
correspondence Plaintiff had with DFEH and EEOC staff and
complaint questionnaires he alleges he completed when he filed

**8**

his respective complaints with these agencies.[2]   (Doc. 25.)
Defendant filed its objection and request to strike Plaintiff's
request for judicial notice on September 19, arguing Plaintiff's
submission violates Local Rule 78-230 and the documents he
submits are not proper subjects of judicial notice because their
accuracy can be and is reasonably questioned by Defendant under
Fed. R. Evid. 201(b).   (Doc. 26.)   On October 15, Plaintiff filed
"Plaintiff's Request for Sanctions Against Opposing Counsel and
Response to Defendant's Objection and Request to Strike
Plaintiff's Request for Judicial Notice."   (Doc. 29.)

### III. <u>STANDARD OF REVIEW</u>.

    A motion to dismiss under Rule 12(b)(6) tests the
sufficiency of the complaint.   *Novarro v. Black*, 250 F.3d 729,
732 (9th Cir. 2001).   A complaint "should not be dismissed unless
it appears beyond doubt that plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."   *Van
Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.
2002)(citations omitted); *see also Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246, 249 (9th Cir. 1997) (issue is not whether plaintiff
will ultimately prevail, but whether claimant is entitled to
offer evidence to support the claim).   Dismissal is warranted
under Rule 12(b)(6) where the complaint lacks a cognizable legal

---

    [2] Unlike the court and agency records for which Defendant
requests judicial notice, the documents Plaintiff submits are
subject to reasonable dispute as they are not public records and
are not "capable of accurate and ready determination by resort to
sources whose accuracy cannot reasonably be questioned."   Fed. R.
Evid. 201(b).   Plaintiff's request for judicial notice is denied.

theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In deciding a motion to dismiss, the court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002).

The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *see Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986), while conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see also Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned."). Allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Thus when ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court may take judicial

10

1  notice.   *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir.
2  1988).

3       *Pro se* complaints are held to less stringent standards than
4  formal pleadings by lawyers.   *Haines v. Kerner*, 404 U.S. 519, 520
5  (1972).   A court must construe a *pro se* plaintiff's "inartful
6  pleading" liberally in determining whether a claim has been
7  stated, including *pro se* motions as well as complaints.   *Zichko*
8  *v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001); *Eldridge v. Block*,
9  832 F.2d 1132, 1137 (9th Cir. 1987).   This is especially true
10 when a plaintiff appears *pro se* in a civil rights case.   *Ferdik*
11 *v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).   While a *pro se*
12 litigant must follow the same rules of procedure that govern
13 other litigants, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.
14 1987), "[d]ismissal of a *pro se* complaint without leave to amend
15 is proper only if it is absolutely clear that the deficiencies of
16 the complaint could not be cured by amendment.*"*   *Schucker v.*
17 *Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988).

18
19                          **IV. <u>DISCUSSION</u>**.
20 **A.   <u>Defendant's Motion to Dismiss Plaintiff's Title VII</u>**
21        **<u>Retaliation Claim</u>**.
22        **1.   <u>Legal Framework for Title VII Retaliation Claims</u>**.
23        Title VII provides that "[i]t shall be an unlawful
24 employment practice for an employer to fail or refuse to hire or
25 to discharge any individual with respect to his compensation,
26 terms, conditions, or privileges of employment, because of such
27 individual's race, color, religion, sex, or national origin."   42
28 U.S.C. § 2000e-2(a)(1).   The employer is also prohibited from

retaliating against an employee for his opposition to an unlawful employment practice.  *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1558-59 (9th Cir. 1994).  The antiretaliation provision of Title VII states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Sexual harassment is a type of sex discrimination covered by Title VII.  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-53 (1998).  Accordingly, an employer's retaliatory conduct in response to an employee's complaint of sexual harassment, a protected activity, is actionable under Title VII's antiretaliation provision.  *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004); *see Garcia v. Los Banos Unified School Dist.*, 418 F.Supp.2d 1194, 1224 (E.D. Cal. 2006).

To properly file suit under Title VII, a plaintiff must first exhaust the administrative remedies available under 42 U.S.C. § 2000e-5.  *See Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).  Under the statute, a plaintiff must initially file a timely charge with the EEOC and, if dismissed, receive a right-to-sue letter from the agency and then file any related court action within 90 days of receipt of the

letter.  *Id*.

Title VII mandates that claims must be filed with the EEOC within 300 days of the alleged discriminatory act(s) if the state in which the discriminatory act occurred has a state agency that deals with such matters.  If not, the time limit is 180 days. The United States Supreme Court has explained:

> An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made.  In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). If not filed within these time limits, a claim is "time barred." *Id*.

In California, a plaintiff who first files charges with the California Department of Fair Employment and Housing ("DFEH") must file the charge with the EEOC within 300 days of the alleged unlawful practice.  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000).  However, the filing time period is not treated as a jurisdictional bar but is subject to equitable doctrines such as tolling or estoppel.  *Nat'l R.R.*, 536 U.S. at 113 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."))  Such doctrines are to be applied sparingly.  *Nat'l R.R.*, 536 U.S. at 113-14.

1  **2.     Acts Prior to and Including Termination.**

2  **Here Plaintiff alleges that, by placing him on**
3  **administrative leave and later firing him, the District**
4  **retaliated against him because he filed a complaint accusing his**
5  **supervisor, Dr. Mericle, of discrimination and sexual harassment.**
6  **He delivered this complaint to Dr. Mericle's supervisor, Tony**
7  **Cantu, the morning of March 19, 2002.  In his opposition papers,**
8  **Plaintiff alleges that he filed his charges with the EEOC on**
9  **September 5, 2006.  But he does not allege any retaliatory**
10 **conduct by the District in the 300 days prior to that date (e.g.,**
11 **between approximately November 2005 and September 5, 2006).**
12 **Rather, he alleges the District retaliated much earlier, when he**
13 **was wrongfully placed on leave from his job with the District at**
14 **Fresno City College on May 6, 2002 and wrongfully terminated on**
15 **January 7, 2003 when the District's Board of Trustees voted to**
16 **terminate his employment.  But these alleged retaliatory acts**
17 **took place more than four years and three years prior to the date**
18 **he filed his EEOC complaint, respectively.  On the face of the**
19 **complaint, Plaintiff's own allegations show he missed the EEOC**
20 **filing period by three years.  This is supported by the EEOC's**
21 **own reasoning for issuing the dismissal and right-to-sue notice**
22 **Plaintiff received from the agency dated December 29, 2006, which**
23 **he attaches to his complaint: "[y]our charge was not timely filed**
24 **with EEOC; in other words, you waited too long after the date(s)**
25 **of the alleged discrimination to file your charge."  (Doc. 1.)**

26 **Next Plaintiff alleges he filed a retaliation complaint**
27 **November 19, 2002 with DFEH and that any EEOC "statute of**
28 **limitations is tolled while the matter is in agency hands,"**

relying on *Elkins v. Derby*, 12 Cal.3d 410 (1974).  Plaintiff
alleges he did not receive a notice of case closure and right-to-
sue from DFEH until August 17, 2006.  This is consistent with the
letter from DFEH to Davenport that Defendant provides as Exhibit
A in its Request for Judicial Notice and of which judicial notice
has been taken.  (Doc. 20.)  Plaintiff's argument fails for a
number of reasons.

    First, *Elkins* is inapplicable in this instance because it
addressed the tolling of the statute of limitations for filing a
civil action in a workers' compensation case where a plaintiff
had filed a claim with the Workmens' Compensation Appeals Board,
not a Title VII claim.  Second, although Plaintiff alleges he
filed his DFEH complaint in November 2002, the public record
indicates it was actually filed much later - in June 2006.
Significantly, the District points out that on the face of the
"Complaint of Discrimination" Plaintiff filed with DFEH, the date
filed, as listed by DFEH, is June 2, 2006 while Plaintiff's
signature is dated November 30, 2002.  (Doc. 20, Ex. A.)  The
same June 2, 2006 date is also evidenced by the agency's stamp
showing the date of receipt of the document.  (*Id.*)  According to
DFEH records, Plaintiff filed his complaint with the agency on
June 2, 2006.  It follows that even if, *arguendo*, as Plaintiff
claims the statute of limitations for EEOC filing *was* tolled upon
filing a complaint with the DFEH, he still missed the filing
deadline by over three years measured by the date of his
termination, when he had actual notice of the basis for his
claims, until the actual DFEH filing date of June 2006, when any
purported tolling would begin.  Accordingly, even if the DFEH

filing tolled the EEOC filing period, Plaintiff does not meet Title VII's timing requirements.

Third, the dual filing doctrine cannot resurrect Plaintiff's claim either.  Under a worksharing agreement between the two agencies, copies of complaints received by DFEH are sent to EEOC for filing and vice versa.  *Paige v. State of California*, 102 F.3d 1035, 1041 (9th Cir. 1996).  Thus, filing a charge "with one agency is 'deemed' to be a filing with both" the state agency and the EEOC.  *McConnell v. Gen. Tel. Co. of Cal.*, 814 F.2d 1311, 1315 (9th Cir. 1987).  Had Plaintiff filed his DFEH complaint within the 300-day Title VII limitations period for filing an EEOC charge, under the dual filing doctrine the complaint would be deemed timely filed with the EEOC.  However, as explained above, judicially noticed indisputable public records evidence that Plaintiff actually filed his complaint with DFEH on June 2, 2006.  Any reciprocity afforded by dual filing does not apply to save Plaintiff's claim.

Nor can a case be made for equitable relief.  The doctrine of equitable estoppel comes into play to excuse a failure to file an EEOC charge within the requisite time period where an employer "misrepresents or conceals facts necessary to support a discrimination charge."  *Santa Maria*, 202 F.3d at 1176-77 (equitable estoppel focuses on actions taken by the defendant to prevent the plaintiff from suing in time).  This is "sometimes called fraudulent concealment."  *Id*.  Here equitable estoppel is inapplicable as Plaintiff does not allege that the District took any actions with the purpose of preventing him from bringing timely charges or concealing its adverse actions against him.

1    One who comes to equity must do so with clean hands.  The

2 unexplained discrepancy between the 2002 date Plaintiff allegedly

3 signed his DFEH claim is 3 years earlier than the file stamped

4 receipt of the claim by the agency's file stamp.  This material

5 inconsistency cuts against Plaintiff.

6    As for equitable tolling, in *Zipes*, the U.S. Supreme Court

7 applied this doctrine to Title VII limitations periods.  The

8 Ninth Circuit allows equitable tolling when a plaintiff is unable

9 to obtain vital information bearing on the existence of his claim

10 while acting with all due diligence.  *Socop-Gonzalez v. I.N.S.*,

11 272 F.3d 1176, 1193 (9th Cir. 2001).  The focus in deciding the

12 applicability of equitable tolling is on whether there was

13 excusable delay by the plaintiff.  *Santa Maria*, 202 F.3d at 1178.

14 In this case Plaintiff unequivocally admits he knew of the

15 alleged retaliatory discrimination in 2002 when he filed his DFEH

16 complaint, which alleges retaliation by the District for

17 Plaintiff's sexual harassment complaint.  Plaintiff also knew of

18 the District's alleged retaliatory conduct when he was terminated

19 by the Board of Trustees in January 2003, as he alleges he made a

20 statement to the Board before their vote.  Plaintiff does not

21 claim he was ignorant of key information relevant to his

22 potential claim to explain why he failed to comply with the EEOC

23 filing time period, nor does he offer any additional relevant

24 information he discovered after his termination.  He does not

25 allege his delay was excusable and the facts he pleads offer no

26 reasonable excuse.  Because Plaintiff cannot show that his

27 failure to file with the EEOC within the limitations period was

28 due to circumstances "beyond [his] control," this failure is

properly characterized as a "garden variety claim of excusable neglect" and equitable tolling may not be invoked. *Socop-Gonzalez*, 272 F.3d at 1193.

3. <u>Post-Termination Acts</u>.

Plaintiff lists a number of acts after his termination date that he alleges are properly classified as continuing retaliatory acts by the District. First, Plaintiff claims the District interfered with his prospective employment when it sent his records to the California teacher credentialing commission in December 2006 and also possibly November 2006. Plaintiff also claims the District acted in retaliation when it ceased to pay him while he pursued his administrative hearing, "harassed" him by "making him defend himself in Superior Court against Emergency Protective Orders sought by certain members of the college staff," caused him to submit his termination matter to arbitrator Ronald Ho, forcing him to exhaust himself and his savings in defending himself at an administrative hearing in which the Defendant did not identify any standard of conduct by which the actions of the Plaintiff were being measured," compelling him to petition the Fresno County Superior Court for a trial de novo, and requiring him to appeal to the Fifth District Court of Appeal and California Supreme Court. (Doc. 17 at 4-5.) None of these complaints by Plaintiff concern acts of or conduct by the District except the wage payment issue. Plaintiff offers no factual or legal authority that he was entitled to post-termination compensation. The rest relate to legal action Plaintiff took of his own volition to judicially remedy his

18

1 alleged wrongful termination.

2     That leaves the allegation of interference by the District
3 with Plaintiff's prospective employment as the only potentially
4 viable post-termination retaliation claim.  Presumably Plaintiff
5 argues these alleged more recent retaliatory acts constitute a
6 timely Title VII claim and are a proper subject of this lawsuit.
7 Although Plaintiff's EEOC charge, filed in September 2006, only
8 claimed retaliatory termination and could not have included
9 retaliatory acts alleged to have taken place in November and
10 December 2006, a "judicial complaint nevertheless may encompass
11 any discrimination like or reasonably related to the allegations
12 of the EEOC charge, including new acts occurring during the
13 pendency of the charge before the EEOC."  *Oubichon v. North Am.*
14 *Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1971); *see Freeman v.*
15 *Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).
16 District court jurisdiction extends to allegations that fall
17 "within the scope of the EEOC's *actual* investigation or an EEOC
18 investigation which *can reasonably be expected* to grow out of the
19 charge of discrimination."  *Equal Employment Opportunity Comm'n*
20 *v. Farmer Brothers Co.*, 31 F.3d 891, 899 (9th Cir. 1994)
21 (emphasis in original; citations and internal quotations marks
22 omitted).  Appropriate factors to consider include the alleged
23 basis of the discrimination, dates of the discriminatory acts
24 specified in the charge, perpetrators of discrimination named in
25 the charge, and the extent to which the judicial claims are
26 consistent with the Plaintiff's original theory of the case.
27 *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).
28     Here the alleged post-termination acts are not "reasonably

related" to Plaintiff's original retaliation charges and are not a proper subject of this lawsuit.  Plaintiff's original complaints to DFEH and EEOC alleged retaliation by the District resulting in Plaintiff's wrongful termination.  The recent alleged acts concern interference with Plaintiff's prospective employment, an entirely different type of claim.  The recent alleged acts could not have fallen within or be reasonably expected to fall within the scope of the EEOC's investigation, because they are factually distinct and temporally remote from the allegations in Plaintiff's EEOC complaint.  Moreover, the alleged post-termination acts occurred in late 2006, more than three years after the retaliatory acts that are the subject of Plaintiff's original EEOC complaint.  There is no jurisdiction over the post-termination retaliation allegations.

Nor can the post-termination acts serve as a "continuing violation" to resurrect Plaintiff's earlier untimely claims.  The Supreme Court has held that discrete unlawful acts are separate unlawful practices under Title VII and "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."  *Nat'l R.R.*, 536 U.S. at 113.  Each discrete discriminatory act starts a new clock for filing charges and must be filed within 300 days of the occurrence of the discriminatory act.  *Id.*  In *Nat'l R.R.*, the Supreme Court did not address the timely filing question with respect to "pattern-or-practice" claims.  536 U.S. at 115 n.9.

This is irrelevant to Plaintiff's recent claims as Plaintiff does not allege an ongoing unlawful employment practice nor do his allegations include a "pattern-or-practice" claim.

Plaintiff's continuing retaliation argument fails because later timely discriminatory acts do not resurrect time-barred acts as Plaintiff attempts to do here.

**4. <u>Conclusion</u>**

Defendant's motion to dismiss Plaintiff's Title VII claim is GRANTED with LEAVE TO AMEND.

**B.   <u>Defendant's Motion to Dismiss Plaintiff's State Law</u> <u>Claim(s)</u>.**

Defendant seeks dismissal of Plaintiff's state law claims on two grounds: 1) Plaintiff has not complied with the prerequisites of the California Tort Claims Act, and 2) the Act's statute of limitations bars his claims.  Plaintiff responds that he has complied with the Act's requirements.  He asserts that he has submitted two claims against the Defendant.  First, he argues he submitted a claim in 2001 for "damages caused by one of his supervisor's acts of sexual harassment," which he alleges was paid by the District.  (Doc. 17 at 8.)  Second, Plaintiff claims he filed a claim after he was "assaulted on March 5, 2002 by one of his students, namely Christopher Brown" and that this claims was not processed by his supervisor.  (*Id.*)

**1.   <u>Prerequisites to Filing Suit Pursuant to the California Tort</u> <u>Claims Act</u>.**

The California Tort Claims Act requires an individual seeking money or damages from a public agency to first file a claim with the agency.  Cal. Gov. Code, § 900 et seq.; *Ard v.*

1  *County of Contra Costa*, 93 Cal.App.4th 339, 343 (2001).

2  Presentation of a timely tort claim is a jurisdictional

3  prerequisite to maintaining such a cause of action against a

4  public entity.  *Id.*; *see Hernandez v. McClanahan*, 996 F.Supp. 975

5  (N.D. Cal. 1998).  A plaintiff's pendent state law claims against

6  a California public agency are barred unless the plaintiff has

7  complied with the requirements of the Tort Claims Act before

8  commencing a civil action.  *See Mangold v. Cal. Public Utilities*

9  *Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).

10      The purpose of the claim presentation requirement "is to

11  facilitate early investigation of disputes and settlement without

12  trial if appropriate, as well as to enable the public entity to

13  engage in fiscal planning for potential liabilities and to avoid

14  similar liabilities in the future."  *Gatto v. County of Sonoma*,

15  98 Cal.App.4th 744, 763 (2002) (quoting *Lewis C. Nelson & Sons,*

16  *Inc. v. Clovis Unified School Dist.*, 90 Cal.App.4th 64, 72

17  (2001)).

18      The claim must include "[a] general description of the

19  indebtedness, obligation, injury, damage or loss incurred so far

20  as it may be known at the time of presentation of the claim."

21  Cal. Gov't Code § 910(d).  The sufficiency of a claim presented

22  under California Torts Claim Act is a case-specific inquiry.

23  When the claim and the complaint set out different factual

24  circumstances, where there has been "a complete shift in

25  allegations, usually involving an effort to premise civil

26  liability on acts or omissions committed at different times or by

27  different persons than those described in the claim," the claim

28  is not sufficient.  *Blair v. Superior Court*, 218 Cal.App.3d 221,

226 (1990).  A complaint is subject to dismissal "if it alleges a factual basis for recovery which is not fairly reflected in the written claim."  *Watson v. California*, 21 Cal.App.4th 836, 844 (1993) (quoting *Nelson v. California*, 139 Cal.App.3d 72, 79 (1982)).

"The essential elements of a claim are set forth in Government Code section 910: (1) the names and addresses of the claimant and the person to whom notices are to be sent, (2) a statement of the facts supporting the claim, (3) a description of the injury and the amount claimed as of the time of presentation, and (4) the name(s) of the public employee(s) who caused the injury, if known.  Although a claim need not conform to pleading standards, the facts constituting the causes of action pleaded in the complaint must substantially correspond with the circumstances described in the claims as the basis of the plaintiff's injury." *Loehr v. Ventura County Community College Dist.*, 147 Cal.App.3d 1071, 1082-1083 (1983).

Here the claims Plaintiff alleges he presented to the District in compliance with the Act concern a 2001 sexual harassment claim and a March 2002 claim of assault by a student. Neither claim contains allegations of wrongful termination based on breach of contract, which is the state law theory Plaintiff advances in the complaint he filed in this lawsuit.  For Plaintiff to meet the requirements of the Act, he must have submitted a claim to the District that is "premised on essentially the same foundation" as the judicial complaint he filed here.  *Nelson*, 139 Cal.App.3d at 79.  Because the two claims advanced concern entirely different factual circumstances

23

and acts from those raised in this lawsuit, the claims Plaintiff alleges he filed with the District in 2001 and 2002 are not sufficient as a matter of law for Plaintiff to maintain a cause of action under the California Tort Claims Act.

2.   <u>Time for Filing Suit Under the California Tort Claims Act</u>.

Government Code section 911.2 requires that claims for injury to persons be submitted no later than 6 months following the accrual of the claim, and for any other claim, within one year of the accrual of the claim.  *Schaefer Dixon Assoc. v. Santa Ana Watershed Project Authority*, 48 Cal.App.4th 524, 531 (1996) summarized the requirements:

> Under the Tort Claims Act, claims against local governmental entities must be presented to the relevant entity within six months (personal injury or property damage) or one year (other causes of action) of the date of accrual of the cause of action. (Gov. Code, § 911.2.)   'The public entity has 45 days to grant or deny the claim; if the claim is not acted upon within 45 days, it is deemed rejected. (§ 912.4) If written notice of rejection is sent, suit must be brought within six months (§ 945.6, subd(a)(1).) If no written notice is given, the claimant is allowed two years from the accrual date to file the suit. (§ 945.6, subd(a)(2).)'

Plaintiff filed the instant lawsuit March 29, 2007.  The District's alleged breach of contract occurred when it placed Plaintiff on administrative leave in 2002 and fired him in 2003. Both of these activities took place five and four years ago, respectively.   The complaint does not allege any personal injury. Plaintiff cannot meet the requirement that he filed suit under the Act within six months or one year following the complained-of events.   The Tort Claims Act's statute of limitations is

24

**jurisdictional.  It bars Plaintiff's state law claims against the District.**

**3.   Conclusion**

  **Defendant's motion to dismiss Plaintiff's state law claims for wrongful termination is GRANTED WITHOUT LEAVE TO AMEND.**

**V.  CONCLUSION.**

  **Defendant's motion to dismiss is GRANTED only as to his Title VII claim.  Because Plaintiff is *pro se*, he is granted LEAVE TO AMEND.  Plaintiff is cautioned that Fed. R. Civ. Proc. 11 requires a reasonable basis in fact and law for a complaint under penalty of sanctions for pursuit of meritless claims.  Any amended complaint shall be filed on or before February 15, 2008.**

IT IS SO ORDERED.

Dated: __January 17, 2008__    __/s/ Oliver W. Wanger__
              UNITED STATES DISTRICT JUDGE